No. 13643

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

RUSSELL BROWN,

               Plaintiff and Respondent,

    -vs-

JOHN WEBB, d/b/a
WEBB CATTLE COMPANY,

              Defendant and Appellant.

---

Appeal from:  District Court of the Fourteenth Judicial District,
            Honorable LeRoy McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

        McKeon and McKeon, Malta, Montana
        John C. McKeon argued, Malta, Montana

    For Respondent:

        Ask and Pratt, Roundup, Montana
        Thomas M. Ask argued, Roundup, Montana

    For Amicus Curiae:

        William E. O'Leary argued, Helena, Montana

---

                Submitted:  May 31, 1977

                Decided: AUG 4 1977

Filed:  AUG 4 1977

*Thomas J. Kearney*

                        Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff brought this action in the district court, Musselshell County, seeking to recover damages for the loss of three cows due to the alleged negligence of defendant in hauling and transporting the cows. Trial was had without a jury. At the close of plaintiff's case-in-chief, defendant moved the court for dismissal under Rule 41(b), M.R.Civ.P. Defendant's motion alleged plaintiff's evidence demonstrated no right to the relief sought, and plaintiff was barred from recovery by the provisions of Item 45 of the Montana Livestock Tariff No. 1. The trial court reserved ruling on this motion until all evidence was introduced.

At the close of trial, the court requested briefs on defendant's motion to dismiss and ordered the case be deemed submitted upon the filing of the requested briefs. Thereafter on August 20, 1976, the court entered its findings of fact, conclusions of law and judgment. A specific ruling was never made on defendant's motion. Defendant appeals from the judgment which awarded damages to plaintiff in the sum of $1,242, plus costs.

In May 1974 Russell Brown, a long time cattle rancher, purchased 225 cows from a ranch located near Big Sandy, Montana. All of the 225 cows had young calves at their side. The evidence is not conclusive as to the age of the calves. Brown contracted with John Webb, d/b/a Webb Cattle Company (Webb), for the transportation of a portion of the 225 cows and calves from the ranch near Big Sandy to his ranch near Musselshell, Montana. The rates and charges agreed upon by the parties were in accord with existing tariffs on file and approved by the Montana Public Service Commission.

Webb is a common carrier of livestock and was engaged in such business in May 1974, operating as a class B carrier under M.R.C. Permit No. 3448 issued by the Montana Public Service Commission.

-2-

In addition, Webb was a participating member carrier in the Montana Livestock Tariff Bureau. The Livestock Tariff Bureau represents approximately 170 member carriers on whose behalf the Bureau files tariff rates, charges, and applicable rules and regulations for approval by the Public Service Commission.

On the evening of May 24, 1974, 45 cows and their calves were loaded in each of two of Webb's tractor-trailer trucks. John Webb was the driver of one truck and one of his employees drove the second truck. During the nightlong trip from Big Sandy to Musselshell, Webb and his driver stopped several times to check the livestock in their trailers. Upon arrival in Roundup, Montana, Webb noticed one cow was down in one of the trailers. He prodded her with an electric prod, but the cow would not or could not get to her feet. Instead of taking further efforts to aid the injured cow, Webb decided to proceed to Brown's ranch, some 34 miles away, to off-load the cattle.

Upon arrival at Brown's ranch the cows and calves were off-loaded into a corral. One cow could not get up and had to be assisted from the trailer by Webb and Brown. The cows from these two loads were not co-mingled with cows from previous loads, nor with cows other than the 225 purchased at Big Sandy.

Within 24 hours after arrival at the ranch one cow died in the corral where the off-loading took place. Webb was notified of the loss and a claim for reimbursement was made by Brown. A second cow died two or three days later. At that point, Webb requested Dr. Orley Arthur, a veterinarian from Roundup, to go to the ranch and perform a post-mortem on the cows to determine the cause of death.

Dr. Arthur testified he performed a post-mortem on only one of the dead cows. He further testified he observed a second cow lying dead in the corral and a third cow lying a short dis-

tance away. The third cow was alive, but seriously injured. This animal later died about five days after its arrival at Brown's ranch. All three animals were covered with a large amount of manure and mud, especially on their sides and backs.

The post-mortem indicated the cow examined died of a pulmonary hemorrhage. Dr. Arthur concluded the animal was subjected to a considerable amount of trauma while down in the truck as evidenced by the hemorrhage in the lungs. Numerous bruises, hematomas, and blood clots were found underneath the skin along the rib cage and over the muscular surface of the body. No sign of disease or other defect was found. Dr. Arthur indicated the two other cows he observed exhibited injuries, leading him to believe the cause of death of the other two was the same as the cow he examined.

Dr. Arthur, Brown, and an expert witness familiar with livestock hauling, all testified the large amount of foreign material on the cows' sides and backs would indicate they were down in the trailers for some time and trampled by the other cows.

The average cost of a cow and calf pair was $400. Commission on their purchase and hauling charges amounted to $5 and $9 per pair respectively. The court awarded Brown damages for the loss of the three cows in the amount of $414 each or a total of $1,242.

Webb presents five issues on appeal:

1. Whether a district court must rule on a motion to dismiss made pursuant to Rule 41(b), M.R.Civ.P., before it can issue its findings of fact, conclusions of law and judgment?

2. Whether Item 45 of the Montana Livestock Tariff No. 1 is binding upon the shipper in the instant case?

3. Whether the evidence was sufficient to support the district court's finding of negligence on the part of Webb?

-4-

4. Whether Brown's claim for loss was properly processed by Webb under the statutes in effect at the time of the claim?

5. Whether the district court properly calculated Brown's damages in the instant case?

Rule 41(b), M.R.Civ.P., provides a procedure whereby a defendant may move for dismissal of an action after plaintiff has presented his case-in-chief "on the ground that upon the facts and the law plaintiff has shown no right to relief." This rule expressly provides that "The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." Webb argues this rule is mandatory upon the district court and the court in the instant case erred when it failed to specifically rule on the motion to dismiss prior to entering its findings of fact, conclusions of law and judgment.

We find no Montana authority which specifically discusses this issue. The Fifth Circuit/of Appeals, however, has specifically considered the issue in regard to Rule 41(b), Fed.R.Civ.P., identical to and the basis of the Montana rule. In Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103, 1116 the court stated:

> "* * * Under Rule 41(b), when the defendant moves for a dismissal at the completion of the plaintiff's presentation of evidence, the trial court has two options: (1) The court as 'trier of the facts may then determine them and render judgment against the plaintiff' or (2) the court 'may decline to render any judgment until the close of all the evidence.'* * *"

Therefore, we hold that a district court, when confronted with a Rule 41(b) motion to dismiss, must rule on the motion when made at the close of plaintiff's evidence, or reserve its ruling until the close of all evidence and then render its judgment. In either event a specific ruling must be made on the motion prior to

-5-

the rendering of a final decision in the case.

Here, although the district erred when it failed to rule on Webb's motion prior to final judgment, this error was harmless. Rule 61, M.R.Civ.P., states:

> or defect
> "* * *no error/in any ruling or order or in
> anything done or omitted by the court or by any
> of the parties is ground for granting a new
> trial or for setting aside a verdict or for
> vacating, modifying or otherwise disturbing a
> judgment or order, unless refusal to take such
> action appears to the court inconsistent with
> substantial justice.* * *"

No substantial injustice was suffered by Webb in light of the fact the court's ruling on his motion was clearly indicated by the final judgment.

Webb argues in his second issue that Item 45 of the Montana Livestock Tariff No. 1 is binding upon Brown and he is therefore precluded from recovery. We disagree.

Under the provisions of section 8-103, R.C.M. 1947, the Montana Public Service Commission is:

> "* * * vested with power and authority, and it
> is hereby made its duty to supervise and regulate
> every motor carrier in this state; to fix specific,
> just, reasonable, equal and nondiscriminatory rates,
> fares, charges and classifications for class A and
> class B motor carriers; to regulate the properties,
> facilities, operations, accounts, services, prac-
> tices, affairs and safety of operations of all
> motor carriers; to require the filing of annual
> and other reports, tariffs, schedules or other data
> by such motor carriers and to supervise and regulate
> motor carriers in all matters affecting the rela-
> tionship between such motor carriers and the travel-
> ing and shipping public. * * *"

Livestock carriers, such as Webb, came under the jurisdiction of the Public Service Commission in 1971 and were required to file tariffs of rates, charges and classifications of commodities pursuant to section 8-103. Such a tariff was filed with the Public Service Commission by the Montana Livestock Tariff Bureau, Inc., of which Webb is a member. One of the provisions contained in this tariff is Item 45; it provides:

> "Livestock subject to parturition within
> thirty (30) days before or after date of ship-
> ment will be accepted only at owner's risk."

Parturition is defined as "the act or process of giving birth * * *".
The American Illustrated Medical Dictionary, 21st Edition, (W. B.
Saunders Company, 1947).

The record reflects that at least a portion of the cattle
hauled by Webb had given birth within the preceding thirty days.
Even if this Court were to assume the lost cows had given birth
to their calves within this time period, we cannot agree with
Webb's contention for this reason:

A common carrier's liability for loss or injury to its
cargo is clearly and succinctly stated in former section 8-812
and section 8-813, R.C.M. 1947 (in effect as of the date of loss):

> "8-812. Unless the consignor accompanies the freight and retains exclusive control thereof, an inland common carrier of property is liable, from the time that he accepts until he relieves himself from liability, pursuant to sections 8-414 to 8-417, for the loss or injury thereof from any cause whatever, except:
>
> "1. An inherent defect, vice, weakness, or a spontaneous action of the property itself;
>
> "2. The act of a public enemy of the United States, or of this state;
>
> "3. The act of the law; or
>
> "4. An irressistible superhuman cause.
>
> "8-813. A common carrier is liable, even in the cases excepted by the last section, if his ordinary negligence exposes the property to the cause of the loss."

Item 45 of the Montana Livestock Tariff No. 1 urged by
Webb as a defense, completely changes the meaning of the cited
sections and in its practical application completely changes the
law. In effect, Item 45 states that any cow hauled within thirty
days before or after giving birth to a calf will be accepted only
at the owner's risk. This completely ignores factors such as the
condition and health of the cow, the equipment and method of
handling used by the carrier, and the provisions of section 8-813.
That section provides for liability on the part of the carrier

even if an inherent defect, for example, is present, if the carrier's ordinary negligence is the cause of the loss.

It is axiomatic that a statute cannot be changed by administrative regulation. State ex rel. Swart v. Casne, _____Mont._____, 564 P.2d 983, 34 St.Rep. 394 and cases cited therein. We therefore hold that here Item 45 is invalid in that it conflicts with section 8-812.

When stripped of all extraneous material, Webb's third issue is simply a challenge to the sufficiency of the evidence supporting the district court's finding of negligence on the part of the carrier. This Court has many times stated the function of the Court is to determine whether there is substantial evidence to support the findings of fact of the district court. We will not reverse such findings of fact unless there is a clear preponderance of evidence against such findings. Crncevich v. Georgetown Recreation Corporation, _____Mont._____, 541 P.2d 56, 32 St.Rep. 963; Cope v. Cope, 158 Mont. 388, 493 P.2d 336. Even where the evidence is conflicting, the judgment will not be disturbed unless there is no substantial evidence in the record to support the judgment. Strong v. Williams, 154 Mont. 65, 460 P.2d 90.

Applying the foregoing principles to the relevant facts contained in the instant case, there is an abundance of substantial evidence supporting the findings. Dr. Arthur, the veterinarian who performed the post-mortem on one of the dead cows, testified:

> "A. * * * So based on these facts, I had reason to believe that the animal had been down in the truck or trailer or whatever, and had been obviously subjected to a considerable amount of trauma while down there, because it takes a considerable amount of trauma to produce hemorrhage in the lungs."

This testimony together with the testimony of Brown and his wife that all three cows were covered with manure up to their backs and had large bruises on their sides would indicate that all three

were down in the truck for a considerable time and were trampled on by the other cows. Further, a representative of the company which manufactured the trailers used by Webb testified that under proper load and manure removal conditions the floors of the trailers should not become so slippery that cattle would fall and become unable to regain their feet.

The district court's findings of fact contained this finding:

> "That the Plaintiff submitted a claim for the three cows to the Defendant immediately after their death and offered to give the calves from the dead cows to the Defendant upon payment of the claim for the three cows; that the defendant never processed the claim in the manner provided by law and never advised the Plaintiff of the disposition of the claim from the time it was submitted up until the date of the trial."

At the time of loss there was no statutory procedure for the processing of claims against carriers by property owners who suffered losses. Webb argues that the phrase "in the manner provided by law" in the quoted finding is in error. We agree. However, we again find this to be a harmless error governed by Rule 61, M.R.Civ.P. There is no indication this rather minor error in the finding substantially prejudiced Webb's rights.

Webb's final contention is that the district court improperly calculated the damages awarded to Brown. The amount of damages allowable for the loss of personal property is the market value of the property lost, plus special costs or fees incurred in its purchase. Farris and Senecal v. Clark, 158 Mont. 33, 487 P.2d 1307, and cases cited therein.

Applying this rule to the instant case we find no error in the district court's calculation of damages. It is uncontroverted that the market value of the cow and calf pairs was $400 per pair. The sale commission and transportation costs of $5 and $9 respectively must be added to the above amount yielding a total cost of

per pair of $414. This was the amount awarded per cow by the district court.

Webb argues the market value of the orphaned calves must be deducted from the total cost per pair. There was no conclusive proof as to the actual market value of the three calves. The court found they had no value and we find substantial evidence to support this finding. In the absence of substantial evidence to the contrary we refuse to disturb the finding made by the district court. Crncevich v. Georgetown Recreation Corp., supra.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-